**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| **LAVERNE WILLIAMS** | § | |
| | | |
| **VS.** | § | **CIVIL ACTION NO. 5:23cv68-RWS-JBB** |
| **COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

On June 28, 2023, Laverne Williams ("Plaintiff") initiated this civil action pursuant to the Social Security Act ("The Act"), Section 405(g), for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits. The Court is of the opinion the above-entitled social security action should be **AFFRIMED.**

**HISTORY OF THE CASE**

On February 1, 2021, Plaintiff applied for supplemental security income (SSI), alleging disability beginning October 22, 1997, due to leg injuries sustained in a car accident, anxiety, and depression (Dkt. Nos. 6-1 through 6-8, "Tr." 27, 67, 83, 156, 158). The Commissioner denied Plaintiff's application initially and upon reconsideration. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). An ALJ held a telephonic hearing on March 7, 2023, where Plaintiff and a vocational expert testified (Tr. 40-65). On April 14, 2023, the ALJ issued a decision finding Plaintiff has not been under a disability, as defined in the Social Security Act, since February 1, 2021, the date the application was filed (Tr. 22-33). Plaintiff's request for a review by the Appeals Council was denied by letter dated June 13, 2023 (Tr. 1-6), and the ALJ's

1

decision became the Commissioner's final decision for purposes of the Court's review pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE FACTS

### *Age, education, and work experience*

Plaintiff was born on July 10, 1980, and was forty years of age on the date the application was filed (Tr. 31). At the date of the hearing, she had a tenth-grade education and had not obtained a GED (Tr. 50). She has no past relevant work experience (Tr. 31).

### *Medical record evidence*

Plaintiff was involved in a motor vehicle collision in 1997 that resulted in a severe fracture of her left leg that required a rod and three bolts (Tr. 301).

On July 1, 2020, Plaintiff saw her primary care provider, Marjorie E Hudson, M.D., for mood complaints (Tr. 265-82). Dr. Hudson's treatment notes noted that Plaintiff complained of a history of depression. Plaintiff reported she used to take multiple anti-depressants, but she stopped taking them after a number of years because Plaintiff tried to manage her depressed mood on her own (Tr. 267). Her primary care provider noted that Plaintiff had a normal mood and affect, she was alert and oriented, and she maintained normal attention and concentration (Tr. 256-66). Dr. Hudson prescribed Plaintiff 25mg of Zoloft (Sertraline HCL) daily for her depression with anxiety (Tr. 269).

On December 14, 2020, Plaintiff had an office visit at UAMS Health Family Medical Center in Texarkana (Tr. 283-307). The office notes list depression and anxiety as problems (Tr. 283).

On April 14, 2021, consultative examiner David Grant, Ph.D., provided a Psychological Report – Mental Status (Tr. 314-19). Dr. Grant reported that Plaintiff seemed to appear open and

honest throughout the assessment, and there was no indication of malingering (Tr. 314). Dr. Grant observed on examination that Plaintiff was cooperative; she demonstrated no evidence of a thought disorder or tangential thinking; she had good abstract thinking; she displayed adequate memory, concentration, and persistence; she worked at a good pace; and she had good judgment (Tr. 315-17). Plaintiff claimed that she regularly felt depressed and anxious (Tr. 314). Dr. Grant noted that Plaintiff explained that she has not received outpatient mental health counseling and that she stopped taking psychotropic medication a couple of months before the visit because she claimed the medication did not help with her mood (Tr. 315). After examining Plaintiff, Dr. Grant opined she would be able to understand, carry out, and follow instructions but would not likely respond appropriately to work pressure due to depressive and anxiety symptoms (Tr. 318). Additionally, Dr. Grant found that Plaintiff had a poor ability to tolerate stress and make reasonable occupational adjustments (Tr. 318).

On April 24, 2021, a consultative examination was conducted by Mohammed Shabana, M.D. (Tr. 320-28).    Following the examination, Dr. Shabana opined that Plaintiff had no limitations with sitting, standing, or walking (Tr. 324). Additionally, he opined that there were no limitations with lifting, carrying weight, bending, stooping, crouching, squatting, reaching, grasping, handling, fingering, and feeling (Tr. 324). Finally, he found that there were no relevant visual, communicative, or workplace environmental limitations (Tr. 324).

On May 25, 2022, Plaintiff was evaluated by Richard B. Sharp, M.D., at Collom & Carney Clinic (Tr. 427-34). Under symptoms, Dr. Sharp noted Plaintiff was positive for fatigue, gait disturbance, and anxiety (Tr. 431). On physical examination, Plaintiff had a "slight antalgic gait on left" but normal stance (Tr. 431). She ambulated with no device; her tandem gait was normal; Romberg was negative; and her affect was normal (Tr. 431). Plaintiff arose from a chair and moved

3

on and off the exam table with ease (Tr. 431). No lower extremity spasm or atrophy was noted (Tr. 432). Straight leg raise was negative bilaterally (Tr. 432). Dr. Sharp further noted:

> Left hip is 90 degrees flexion and 5 degrees extension. Left abduction is 20 degrees and 10 degrees adduction. Left internal rotation is 15 degrees and 35 degrees external rotation. Mild tenderness noted at the left lateral hip. No warmth, crepitus, redness or effusion noted. FABER mildly positive. Extremities with no cyanosis, clubbing or edema noted.

(Tr. 432).

X-rays of Plaintiff's knees, pelvis, and left femur were ordered (Tr. 427-29). Regarding Plaintiff's knee, Dr. Sharp noted the x-rays showed "mild patellofemoral joint space narrowing." (Tr. 433). Dr. Sharp further noted an intact left distal femur rod with interlocking screws (Tr. 433). Regarding Plaintiff's left hip, Dr. Sharp noted the hardware was intact, the fracture healed, and Plaintiff had a mild limp and would have difficulty with ladders and stairs (Tr. 433). Dr. Sharp further noted the distal aspect of the hardware was incompletely imaged (Tr. 433). Additionally, the x-ray provided the following findings:

> There is a remote, healed fracture deformity of the left proximal femoral diaphysis.
>
> There is bony prominence of the superolateral acetabuli bilaterally, suggestive of pincer type deformities. There is mild superior joint space narrowing of the hips, slightly greater on the left. The SI joints and pubic symphysis are maintained.

(Tr. 427).

On July 11, 2022, Plaintiff was evaluated by Licensed Clinical Psychologist, Randall Rattan, Ph.D. (Tr. 437-43). Gait disturbance was not observed, and Plaintiff's primary complaints included mood and anxiety related symptoms (Tr. 437). Similar to Dr. Grant, Dr. Rattan noted that Plaintiff was polite, she did not have a thought disorder, and she had intact memory (Tr. 439-40). Dr. Rattan opined Plaintiff is capable of carrying out basic instructions and exhibiting contextually

appropriate behavior, but she might have some intermittent difficulty maintaining consistent employment from a mental health standpoint (Tr. 441).

## THE HEARING

### *Plaintiff's testimony*

Plaintiff was not represented by counsel at the telephonic hearing; however, the ALJ advised Plaintiff that she had the right to representation (Tr. 42-43). Plaintiff told the ALJ that she wanted to proceed without representation (Tr. 43). The ALJ asked Plaintiff if she had the opportunity to review the medical records in her file, and she answered "no." (Tr. 44-45). The ALJ then advised Plaintiff that he would connect her with someone to go over her file after the hearing and show her how to access her file online (Tr. 45).

Plaintiff testified that she lived with her youngest son (age 17) in a duplex and had resided at this location for around five years (Tr. 48). Plaintiff stated that she does not have a driver's license, and she has never had one (Tr. 49). According to Plaintiff, she never learned to drive due to her anxiety (Tr. 49). Plaintiff testified that, due to her anxiety of driving, she does not travel often so she mostly stays at home (Tr. 49). Plaintiff stated that when she needs something she gets one of her three children to go pick it up for her (Tr. 49). However, according to Plaintiff, she will only leave the house when it is something important like paying her rent or attending doctor's appointments (Tr. 49-50). When she does leave home, Plaintiff gets one of her three children to drive her (Tr. 49-50). Plaintiff stated that her 17-year-old son does not have a vehicle; however his girlfriend does, and both of them pick up things for Plaintiff (Tr. 50).

Plaintiff testified that she has a 10th grade education and never completed her GED (Tr. 50). Plaintiff stated that she injured her left leg when she was young; however she faces more problems with her leg as she grows older (Tr. 52). According to Plaintiff, she had "a lot of pains"

and "certain medicines make it worse." (Tr. 52). Plaintiff testified that she was not getting treatment for her leg and had not gotten treatment since the surgery she had in 1997 (Tr. 52). Outside of the physicians she saw for her social security claims, Plaintiff has not seen a doctor regarding her leg problems (Tr. 52). Plaintiff stated that she receives Medicaid, and she only goes to the doctor for her yearly checkups. She stated she is unable to afford a doctor for her leg problems (Tr. 52). Plaintiff testified that she has pain in her left leg every day, and the pain will occur throughout the day from sitting, walking, and going up and down stairs (Tr. 53). She stated that she does not do a lot of walking, so she usually just walks from one end of her home to the other (Tr. 53). She also stated that she does not do much lifting, but when she does, she lifts things like dirty clothes (Tr. 53). She testified that the longest she can sit is maybe thirty minutes, after which time her leg begins to cramp up (Tr. 53-54).

When asked about moderating her pain, Plaintiff stated that she is "not big on pain medicine or anything." (Tr. 54). According to Plaintiff, she was taking anxiety medicine; however the medication made her leg spasms worse (Tr. 54). Plaintiff testified that she was not taking any medication at the time of the hearing. According to Plaintiff, her doctor put her on anxiety medicine, but she experienced side effects from the medication (Tr. 54-55). Plaintiff also stated that she was on several different high blood pressure medicines, but she could not take them because they were too strong and made her "head and stuff hurt." (Tr. 55). Plaintiff stated that her primary doctor is at UMAS Health Family Medical Center in Texarkana, but it had been about five or six months before the hearing since she had been there (Tr. 55). Plaintiff asserted the pain in her left leg limits her ability to stand, walk, or sit for a long period of time (Tr. 60).

Plaintiff testified that other than her left leg and anxiety, she does not have any other medical conditions that would cause her problems working (Tr. 56). As far as her anxiety, Plaintiff

testified that she does not see a doctor for it, nor has she seen a mental health professional (Tr. 56). Plaintiff stated she saw a mental health professional as a child, but she had not seen one during her adult life (Tr. 56-57). Additionally, Plaintiff confirmed that she had not taken any medication for her anxiety from the time of her SSI application to the hearing (Tr. 57). When asked about how her anxiety affects her daily life, Plaintiff stated that she mainly stays to herself in her room and sleeps (Tr. 57). Plaintiff explained that she prefers not to be around "a whole lot of people" because of her anxiety (Tr. 58). According to Plaintiff, the only time she is around a big group of people is during church; however, she stopped attending church a couple of months before the hearing (Tr. 58-59).

The ALJ inquired about Plaintiff's daily schedule, and she answered that she "don't do nothing every day." (Tr.59). Plaintiff claimed that she sleeps better in the daytime, so she sleeps until the afternoon, after which she will eat and watch a little TV (Tr. 59). Plaintiff confirmed that she can dress, bathe, shower, and comb her hair by herself (Tr. 59). Plaintiff also confirmed that she does the chores around the house, like laundry, cooking, and cleaning (Tr. 59).

According to Plaintiff, the last time she worked was three years prior to the hearing (Tr. 51). Plaintiff stated that she cleaned houses; however, this position lasted for around three weeks (Tr. 51). Plaintiff stated that "the lady I was working for, she kind of wanted me to split my income with her." (Tr. 51). According to Plaintiff, this resulted in her telling this lady that she was not able to work the job anymore (Tr. 51). According to Plaintiff, she was supposed to be given other work, but she never heard anything about a follow-up job (Tr. 51). Plaintiff stated that she believed she was unable to work because of her left leg and the possibility of her standing and using the leg for work (Tr. 51-52).

***Vocational expert testimony***

7

A vocational expert also testified at the hearing. In the first hypothetical, the ALJ asked the vocational expert to consider a person with Plaintiff's same age, education, and work history who would have the residual functionals to perform work at the medium exertional level, except that person could understand, remember, and carry out simple instructions, tolerate occasional interaction with the general public, and frequent interaction with coworkers and supervisors (Tr. 62). The vocational expert testified that the hypothetical person would be able to work in the national economy (Tr. 62). According to the vocational expert, examples of available jobs would be hand packager, sandwich maker, and stores laborer (Tr. 62-63).

For the second hypothetical, the ALJ asked the vocational expert to modify the first hypothetical such that the hypothetical person would be limited to a sedentary duty level of work, but could only sit for thirty minutes at one period of time and could only sit for a total of four hours out of an eight hour day; could stand and walk a total of two hours out of an eight hour day; could also understand, remember, and carry out simple instructions; and could tolerate occasional interaction with the general public and frequent interaction with coworkers and supervisors (Tr. 63). According to the vocational expert, such person would not be able to perform any work in the national economy (Tr. 63). The vocational expert stated that "the total number of hours worked would be less than eight hours, which is considered full time work." (Tr. 63).

## APPLICABLE LAW

### *Standard of review*

In an appeal under § 405(g), the Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995), and conflicts in the evidence are resolved by the Commissioner, *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985).

### *Entitlement to benefits*

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *Plaisance v. U.S. Comm'r, Soc. Sec. Admin.*, Civil Action No. 6:18-CV-00033, 2019 WL 2608884, at *14 (W.D. La. May 13, 2019), *report and recommendation adopted sub nom. Plaisance v. U.S. Comm'r*, No. 6:18-CV-00033, 2019 WL 2607498 (W.D. La. June 25, 2019) (citing 42 U.S.C. § 423(a)). The Supplemental Security Income ("SSI") program provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. *Plaisance*, 2019 WL 2608884, at *14 (citing 42 U.S.C. § 1382(a)(1) & (2)).

### *Sequential evaluation process and burden of proof*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (2012). First, a claimant who, at the time of his disability claim, is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(a)(4)(i) (2012). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(a)(4)(ii) (2012). Third, if the alleged impairment is severe, the

claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1 (2011). 20 C.F.R. § 404.1520(a)(4)(iii) (2012). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(a)(4)(iv) (2012). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity ("RFC") to engage in work available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v) (2012). If, at any step, the claimant is determined to be disabled or not disabled, the inquiry is terminated. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citing *Lovelace v. Bowen,* 813 F.2d 55, 58 (5th Cir.1987)).

Under the first four steps of the sequential analysis, the burden lies with the claimant to prove disability. *Audler,* 501 F.3d at 448. If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical–Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen,* 810 F.2d 1296, 1304 (5th Cir.1987). However, this process is used only when an initial determination of disability is being evaluated, not when a claimant is already receiving disability benefits. *See* 20 C.F.R. § 404.1520(a)(5). The Code explicitly states, "If you are already receiving disability benefits, we will use a different sequential evaluation process to decide whether you continue to be disabled. We explain this process in § 404.1594(f)." *Id*.

## THE ALJ'S FINDINGS AND CONCLUSIONS

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 1, 2021, the application date (Tr. 25). At step two, the ALJ found Plaintiff had severe impairments of degenerative joint disease of the left hip and knee with a remote history of ORIF surgery, major depressive disorder, and generalized anxiety disorder (Tr. 25). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I, including Listings 1.18, 12.04, and 12.06 (Tr. 25).

The ALJ next found that Plaintiff has the residual functional capacity to perform medium work with the following non-exertional limitations: she could understand, remember and carry out simple instructions, tolerate occasional interactions with the general public, and frequent interaction with co-workers and supervisors (Tr. 26-31).

At step five, relying on the vocational expert's testimony, the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform other work existing in significant numbers in the national economy (Tr. 31-32). Specifically, the ALJ determined Plaintiff would be able to perform the requirements of representative occupations such as hand packager, sandwich maker, and stores laborer. (Tr. 32). The ALJ determined Plaintiff had not been under a disability, as defined in the Act, from February 1, 2021, the date the application was filed (Tr. 32).

## ANALYSIS

"The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Substantial evidence is a term of art used to describe how courts are to review

agency fact-finding. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Under the substantial evidence standard, a court looks to the existing administrative record to determine whether it contains sufficient evidence to support the agency's factual determinations. *Id.* Although "substantial" has a different meaning in other contexts, the threshold of sufficient evidence to satisfy the substantial evidence standard "is not high." *Id.* Substantial evidence requires more than a mere scintilla of evidence, but it "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Substantial evidence has four categories: "(1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history." *Redford v. Comm'r of Soc. Sec. Admin.*, No. 6:21-CV-00333-JCB, 2022 WL 16626738, at *2 (E.D. Tex. Oct. 5, 2022), *report and recommendation adopted sub nom. Redford v. Comm'r of Soc. Sec.*, No. 6:21-CV-00333, 2022 WL 16625661 (E.D. Tex. Nov. 1, 2022) (citing *Fraga*, 810 F.2d at 1302 n.4.) If the Commissioner's decision is supported by substantial evidence, then his findings are conclusive and must be affirmed. *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).  However, the court must do more than "rubber stamp" the ALJ's decision; the court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Id.* (quoting *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, a claimant also bears the burden of showing any alleged error of law was prejudicial because the Supreme Court has recognized the doctrine

of harmless error applies to administrative determinations, and the Fifth Circuit has specifically held it will not vacate a judgment unless the substantial rights of a party are affected. *See Shinseki v. Sanders*, 556 U.S. 396, 407-08 (2009); *Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

The overarching issues are whether substantial evidence of record supports the Commissioner's decision that Plaintiff was not disabled during the relevant period, and whether the ALJ applied the correct legal standards in reaching that decision. Having reviewed the parties' briefs, the Court notes the following specific issues on appeal: (1) whether substantial evidence supports the ALJ's physical residual functional capacity finding; and (2) whether the ALJ erred in his evaluation of Plaintiff's subjective complaints.

### *Substantial evidence supports the ALJ's physical residual functional capacity finding*

As to the first issue, Plaintiff argues that the ALJ's physical RFC determination was unsupported by substantial evidence because the ALJ failed to rely on any medical opinion. Dkt. No. 9 at 3. Specifically, Plaintiff disputes the ALJ's finding her capable of performing medium work. *Id.* Plaintiff relies on the evidence of record regarding the problems with her left leg since the 1997 motor vehicle collision. She also relies on her hearing testimony as to her limited finances and why she has not sought treatment for her left leg. *Id.* at 4-10. In its response, the Commissioner argues the ALJ's RFC decision is supported by substantial evidence because the ALJ considered Plaintiff's treatment history and objective medical findings.[1] Dkt. No. 12 at 4.

---

[1] Plaintiff filed her claims after March 27, 2017; as such, 20 C.F.R. § 404.1520c governs. Generally, this means, "ALJs are no longer required to give controlling weight to a treating physician's opinion." *Simon v. Kijakazi*, No. CV 22-3101, 2023 WL 2562754, *7 (E.D. La. Mar. 17, 2023) (quoting *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021)). Instead, the ALJ "considers a list of factors in determining what weight, if any, to give a medical opinion." *Webster*, 19 F.4th at 719 (citing § 404.1520c). These factors include (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. § 404.1520c(c)(1)-(5).

The RFC is an assessment made by the Commissioner, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his physical or mental impairments. *Redford*, 2022 WL 16626738, at *2 (citing 20 C.F.R. § 416.945(a); also citing *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001)). When evaluating a claimant's physical abilities, the Commissioner first assesses the nature and extent of physical limitations, and then determines the RFC for work activity on a regular and continuing basis. *Id*. (citing 20 C.F.R. § 404.1545). The ALJ makes separate function-by-function findings of the seven exertional strength demands (sitting, standing, walking, lifting, carrying, pushing, and pulling), and other non-exertional physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching). *Id*. (citing SSR 96-8; 20 C.F.R. § 404.1545(b)). Only after the function-by-function analysis may the RFC be expressed in terms of the exertional levels of work (sedentary, light, medium, heavy, and very heavy). *Id*. (citing SSR 96-8).

"The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir.1987)). "[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985)) (internal quotations omitted). "The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985) (citing *Jones v. Heckler,* 702 F.2d 616 (5th Cir. 1983)). The ALJ "must build an accurate and logical bridge between the evidence and the final determination." *Price v. Astrue*, 401 Fed. Appx.

985, 986 (5th Cir. 2010) (citing *Glomski v. Massanari*, 172 F. Supp. 2d 1079, 1082 (E.D. Wis. 2001)).

Here, the ALJ found that Plaintiff retained the residual functional capacity to perform medium work except she could understand, remember and carry out simple instructions, tolerate occasional interactions with the general public and frequent interaction with co-workers and supervisor (Tr. 26). After considering the evidence of record, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms: however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained" in the following four pages of substantive discussion (Tr. 27-31). Among other things, the ALJ noted as follows:

> The medical record shows that the claimant has a remote history of a traumatic injury to her left lower extremity requiring prior surgical intervention. However, treatment notes do not show that she has sought treatment or care for this condition. Further, imaging received does not reveal any significant issues and findings on physical examination throughout the record does not indicate any significant abnormalities in her lower extremity. This evidence is not consistent with the claimant's allegations regarding the severity, frequency or intensity of her symptoms of pain in her lower extremity and does not support her alleged functional limitations in terms of difficulties sitting, lifting, carrying, to performing weight bearing activities.

> Treatment notes show that the claimant has received medication management through a primary care provider at the University of Arkansas for Medical Sciences since the alleged onset date. . . . However, the records do not show that the claimant has sought treatment for any pain in her lower extremity, and just denotes her lower extremity fracture and repair as part of her past medical history. Treatment records do not indicate that the claimant has discussed this condition with her medical providers, and review of systems records negative responses regarding pain. Further, findings on physical examination with her primary care provider, consistent denote no abnormalities, with a normal gait and station. . . . In total, the lack of sought care from her primary care provider for this principal impairment that the claimant has alleged causes her disabling limitations is not consistent with the claimant's allegations regarding the severity, intensity or frequency of the symptoms that she has alleged result from this impairment.

(Tr. 27-28).

The ALJ considered the opinions of two physical evaluations performed by two separate consultative examiners, as well as the opinions of the state agency medical consultants (Tr. 29-31). The ALJ considered the opinions of two state agency medical consultants, finding as follows:

> Cynthia Linardos, M.D., a state agency medical consultant, concluded that the claimant's lower extremity fracture limited her to medium work (1A). Nancy Childs, a state agency medical consultant, also concluded that the lower extremity fracture was severe, but did not state functional limitations resulting from this impairment (2A). The undersigned finds Dr. Linardos's opinion persuasive, as this is consistent with the findings on examinations throughout the record of a maintained normal gait and station, intact neuromuscular findings, and only some mild tenderness. . . . Further, this opinion is supported with well-reasoned analysis with the medical records ability when the opinion was rendered. However, Dr. Child's opinion is not persuasive, as no opinion on the functional limitations imposed by the claimant's impairment was rendered, this is not supported with a well-reasoned analysis of the available medical records, nor consistent with the available findings on examination and testing.

(Tr. 30).

Plaintiff argues the ALJ erred in discrediting the opinion of consultative examiner Dr. Sharp. However, the ALJ did explain his findings. Regarding Dr. Sharp's consultatiation, he found the following:

> On May [sic] 25, 2022, the claimant underwent a consultative examination with Richard Sharp, M.D. but, following examination and imaging did not provide an opinion on any functional limitations imposed by the claimant's impairments (Ex. 5F). The undersigned finds this to be unpersuasive. Although no real opinion is given regarding the claimant's exertional limitations, the findings on examination are significant in evaluating the severity of the claimant's impairment.

(Tr. 31). According to Plaintiff, the ALJ relied on evidence that only described her conditions rather than evidence that demonstrated "her ability to work despite those impairments." Dkt. No. 9 at 8. Plaintiff questions why the ALJ did not required Dr. Sharp to performa a functional limitation as to Plaintiff's ability to sit, stand, walk, etc. *Id.* Plaintiff argues the record does not

clearly establish how Plaintiff's conditions impacted her ability to perform medium work, and "there are no medical opinions to otherwise serve as a foundation for [the ALJ's] decision." *Id.* at 9. As such, Plaintiff argues the ALJ erred in making a physical RFC determination without evidence of how her impairments affected her ability to work. *Id.* In conclusion, Plaintiff contends the record does not contain substantial evidence sufficient to support the ALJ's determination concerning Plaintif's medical condition and its impact on her ability to work. *Id.* at 11.

In its response, the Commissioner first asserts the medical evidence of record showing Plaintiff had a normal gait, normal range of motion, 5/5 muscle strength, negative straight leg raising and could squat and rise with ease and move on and off the examination table with ease (Tr. 26-31, 314, 322-323, 332, 347, 351, 431-432, 453, 456) "supports the ALJ's RFC finding and easily surpasses the substantial evidence threshold." Dkt. No. 12 at 4. According to the Commissioner, what Plaintiff characterizes as the ALJ's "impermissible interpretation of medical data is actually the ALJ properly interpreting the medical evidence to determine Plaintiff's capacity for work." *Id.* In response to Plaintiff's suggestion that the ALJ should have recontacted Dr. sharp for an opinion about Plaintiff's limitations, the Commissioner states the ALJ already had an opinion from Mohamed Shabana, M.D.[2], who conducted an earlier physical consultative examination and opined Plaintiff had no limitations in sitting, standing, walking, lifting, and carrying.[3] *Id.* at 5. Although the ALJ did not find Dr. Shabana's opinion to be persuasive, the

---

[2] The ALJ stated that James Jean, M.D., authored this opinion; however, Dr. Jean appears as the physician who interpreted Plaintiff's consultative x-ray (Tr. 327).

[3] Consultative examiner Mohamed Shabana, M.D., opined Plaintiff had no limitation in sitting, standing, walking, lifting, and carrying (Tr. 31, 324). Although the ALJ did not find the opinion persuasive, the ALJ did note certain aspects of the opinion were supported by findings on examination:

> In general, the opinion that the claimant's impairment would not cause limitations to their weight bearing capacity, tolerance for sitting, or performing postural changes is supported by the findings on his examination, showing no significant abnormalities aside from some mild tenderness in her

Commissioner asserts, in any event, the ALJ was not required to rely on any particular opinion in his RFC analysis. *Id.* Thus, according to the Commissioner, Plaintiff shows no error. The Court agrees.

It is true an ALJ cannot determine, from raw medical data, the effects of impairments on a claimant's ability to work. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The Fifth Circuit has noted that an ALJ may not "without opinions from medical experts--derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions… the ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 Fed. Appx. 828, 832 n.6 (5th Cir. 2009); *see also Ripley,* 67 F.3d at 557; *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) ("An ALJ should avoid 'playing doctor' and [make] their own independent medical assessments."). Thus, "the record must contain evidence of the effects the claimant's medical conditions have on her ability to work." *Moreno v. Astrue*, No. 5:09-CV-123-BG, 2010 WL 3025525, at *3 (N.D. Tex. June 30, 2010), *report and recommendation adopted*, No. 509-CV-123-C, 2010 WL 3025519 (N.D. Tex. Aug. 3, 2010) (citing *Ripley,* 67 F.3d at 557). However, the ALJ may consider residual functional capacity assessments made by "State agency medical and psychological consultants and other program physicians" to be a "medical source statement." 20 C.F.R. § 416.913.

As noted above, state agency medical consultant Cynthia Linardos, M.D., specifically addressed how Plaintiff's physical impairments affected her ability to work. In his decision, the

---

left hip. That conclusion is also consistent with the lack of treatment sought by the claimant for her condition or noted normal findings on physical examination with her primary care provider. . . . However, this is not consistent with the claimant's testimony regarding the functional limitations imposed by her impairment and symptoms, or the analysis and opinion of the state agency medical consultant, who concluded that some limitations to her functional capacity were supported. . . .

(Tr. 31).

ALJ noted Dr. Linardos' opinion that Plaintiff's lower extremity fracture limited her to medium work (Tr. 30). Subsequently, the ALJ found this determination to be persuasive. The ALJ stated that Dr. Linardos' opinion was "consistent with the findings on examinations throughout the record of a maintained normal gait and station, intact neuromuscular findings, and only some mind tenderness." (Tr. 30). Further, the ALJ elaborated that it was "supported with well-reasoned analysis with the medical records ability when the opinion was rendered." (Tr. 30). This evidence supports the ALJ's RFC determination. *See Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) ("A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.").

The ALJ thoroughly examined the evidence and was able to make a determination based on medical opinions, which did not necessitate any additional examination from Dr. Sharp. Although an ALJ has a duty to develop the facts, *Ripley*, 67 F.3d at 557, an ALJ is not required to recontact a medical source based on inconsistent or insufficient evidence if he is still able to make a disability determination based on the evidence in the record. *See* 20 C.F.R. § 416.920b. Here, the ALJ's decision contained several pages of objective medical records from Plaintiff's primary care providers and consultative physicians. As noted above, the ALJ addressed the opinions of two physical evaluations performed by two separate consultative examiners, only one of which was Dr. Sharp (Tr. 31). The ALJ also considered the opinions of two state agency medical consultants, one of which provided a functional limitation examination. *Jones*, 691 F.3d at 733 (noting that the ALJ is required to request more documentation only where there is no relevant evidence from other sources).

Within her first claim for relief, Plaintiff argues the ALJ erred in discrediting her because of the limited treatment on her left leg, stating she testified regarding her limited finances. Dkt No.

9 at 4. Indeed, Plaintiff testified about her ability to afford care regarindg her leg during the hearing (Tr. 52). This was the only evidence regarding her inability to afford care. Although Plaintiff cited finances for her lack of care, she failed to provide evidence showing that she sought low-cost or free care. *Gena R. v. Comm'r of Soc. Sec.,* No. 4:21-CV-1352, 2022 WL 16924116, at *11 (S.D. Tex. Nov. 11, 2022), *appeal dismissed sub nom. Roden v. Kijakazi,* No. 23-20032, 2023 WL 4846446 (5th Cir. Apr. 17, 2023) ("However, an inability to afford treatment by itself is insufficient to establish disability; a claimant must also show that he could not obtain medical treatment from other sources, such as free or low-cost health clinics."); *Lovelace v. Bowen,* 813 F.2d 55, 59 (5th Cir. 1987); *see also Buchholtz v. Barnhar*t, 98 Fed. Appx. 540, 546 (7th Cir. 2004) (citing *Osborne v. Barnhart,* 316 F.3d 809, 812 (8th Cir.2003)) ("An absence of evidence that a claimant sought low-cost or free care may warrant discrediting his excuse that he could not afford treatment.").

In sum, the Court finds the ALJ's RFC decision is supported by substantial evidence.

### The ALJ did not err in his evaluation of Plaintiff's subjective complaints

In her second claim for relief, Plaintiff argues the ALJ failed to properly assess her symptoms, which resulted in the ALJ not complying with the proper legal standards. Dkt. No. 9 at 11. Specifically, Plaintiff argues the ALJ did not follow 20 C.F.R. §416.929 and SSR 16-3P, 2016 SSR Lexis 4. *Id*. at 11. In its response, the Commissioner asserts the ALJ gave due consideration to Plaintiffs subjective symptoms. Dkt. No. 12 at 6. Again, the Commissioner maintains the objective findings (showing Plaintiff had a normal gait, normal range of motion, 5/5 muscle strength, negative straight leg raising and could squat and rise with ease and move on and off the examination table with ease) do not entirely support Plaintiff's claims of disability. *Id.* The Commissioner further points out that Plaintiff is able to prepare meals, clean, shop, and do laundry,

20

and she stated that she could pay attention, finish what she started, and follow instructions well. *Id.* (citing Tr. 26-31, 208-211, 231-234, 318, 321).

The ALJ must consider the claimant's subjective symptoms, including pain, and how these symptoms affect their daily living and ability to work. 20 C.F.R. § 404.1529(c)(3). Twenty C.F.R. § 416.929(c)(3) provides a non-exclusive list of factors for considering the credibility of a claimant's subjective complaints: (1) daily activities; (2) location, duration, frequency and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; (7) other factors concerning your functional limitations and restrictions due to pain or other symptoms.

A claimant's statements regarding her "pain and other symptoms will not alone establish that [she is] disabled." § 416.929(a). Along with subjective symptoms, the ALJ must consider "objective medical evidence from an acceptable medical source" and the extent to which those symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence. *Id.*; *see Salgado v. Astrue*, 271 Fed. Appx. 456, 458 (5th Cir. 2008) ("adjudicators consider both objective evidence from medical reports and subjective evidence, such as an applicant's claims regarding symptoms and pain.").

The Social Security Administration republished SSR 16-3P,[4] which reimplemented the guidance about how the agency evaluates statements regarding the intensity, persistence, and

---

[4] The ALJ cited the requirements of both 20 C.F.R. § 416.929 and SSR 16-3p before his analysis, which shows acknowledgment of the legal standards. (Tr. 26); *see Guillory v. Saul*, Civil Action No. 1:19-CV-632, 2021 WL 1600283, at *11 (E.D.Tex. April 23, 2021) ("First, the ALJ cited the pertinent Regulations, which demonstrate their relevance in his deliberations of Plaintiff's subjective symptoms."); *see also Jackson v. Commissioner of Social Security*, Civil Action No. 4:20-cv-01149-O-BP, 2021 WL 5042479 (N.D.Tex. Sept. 20, 2021).

limiting effects of symptoms in disability claims under Titles II and XVI of the Social Security Act (Act). Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). Accordingly, ALJs have a two-step process for evaluating an individual's symptoms. *Id.* The Fifth Circuit has coined the term as the "objective-subjective" two-step process when "evaluating an applicant's subjective evidence and the applicant's credibility if a credibility determination is necessary." *See Salgado*, 271 Fed. Appx. at 458. At step one, the ALJ determines whether the objective evidence from "an acceptable medical source establishes the existence of a medically determinable impairment that could reasonably be expected to produce an individual's alleged symptoms." SSR 16-3P, 2017 WL 5180304, at *3. If there is no impairment, then the claimant is not disabled. *Id*. If there is an impairment, then at step two, the ALJ evaluates the "intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities for an adult[.]" *Id.* at *4. Specifically, the ALJ "considers the applicant's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the applicant's ability to do basic work." *Salgado*, 271 Fed. Appx. at 458.

Here, at step one of the "objective-subjective" process, the ALJ considered the evidence and found that Plaintiff's impairments reasonably caused the alleged symptoms (Tr. 27). The ALJ then proceeded to step two and determined that her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 27). Plaintiff challenges the ALJ's findings at the second step and argues that the ALJ failed to consider her subjective symptoms.

Focusing first on her physical impairments, Plaintiff claims the ALJ improperly discredited her pain based on three visits to her primary care doctor which showed on examination that Plaintiff had normal gait and station. Dkt. No. 9 at 11. Plaintiff maintains there was no examination of her hip or left leg during these three visits. *Id.* at 11. Plaintiff states she complained to both consultative examinders about the pain in her left leg, and Dr. Sharp noted Plaintiff had a "gait disturbance." *Id.* at 11-12. Further, she cited her testimony during the hearing in support of her "chronic pain in her left leg and hip." *Id.* at 12. Again, Plaintiff suggests the ALJ should have requested that Dr. Sharp, who performed a thorough evaluation, provide an additional opinion as to Plaintiff's functional limitations. *Id.* at 13 (noting the ALJ knew Plaintiff was unrepresented and had limited treatment).

The ALJ noted several times that Plaintiff failed to seek regular treatment regarding the pain in her left leg and hip. (Tr. 27) ("treatment notes do not show that she has sought treatment or care for this condition"); (Tr. 28) ("the lack of sought care from her primary care provider for this principal impairment that the claimant has alleged causes her disabling limitations is not consistent with the claimant's allegations"); (Tr. 28) ("treatment notes from her primary care provider does not indicate that the claimant has sought any treatment for this condition"). Despite Plaintiffs contention, a claimant's lack of treatment is within the scope of evidence the ALJ may consider. *See Villa*, 895 F.2d at 1024 (noting that lack of treatment is also an indication of non-disability); *see, e.g., Turner v. Comm'r of Soc. Sec.,* No. 6:22CV492-KNM, 2024 WL 778392, *7 (E.D. Tex. Feb. 26, 2024). Thus, the ALJ properly considered Plaintiff's lack of treatment in his RFC determination.

"[S]ubjective complaints of pain must be corroborated by objective evidence." *McHugh v. Berryhill*, 2019 WL 2471669, at *3 (N.D.Tex., 2019) (citing *Houston v. Sullivan*, 895 F.2d 1012,

1016 (5th Cir. 1989)). The ALJ need not discuss each piece of evidence that was accepted or rejected, instead, he is required to explain his reasons for rejecting the plaintiff's complaints of pain. *See Falco v. Shalala*, 27 F.3d 160, 163-164 (5th Cir. 1994); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983) ("[t]he evaluation of a claimant's subjective symptoms is a task, particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled.").

Here, the ALJ acknowledged the statements Plaintiff made to the consultative examiners:

> In order to evaluate her lower extremity condition, the claimant attended two consultative examinations [Dr. Sharp and Dr. Shabana]. In both, the claimant alleged an ongoing history of pain in her left lower extremity following her accident years ago, causing her difficulty with weight bearing activities, climbing stairs, any other activities, due to consistent pain in her left lower extremity.

(Tr. 28). Additionally, the ALJ considered Plaintiff's hearing testimony in his decision.

> In hearing, the claimant testified that she lived with her youngest son, who was in high school, and that she had never had a driver's license as she has been scared to learn due to a car accident when she was younger where she injured her leg. She got around by getting rides from her children to go to doctor's appointments, grocery shopping, or other places. She alleged she was unable to work due to pain in her left leg causing her difficulty standing or walking for long periods but was not currently receiving medical treatment for that condition and hasn't received treatment following her surgier in 1997. She alleged that walking, climbing stairs, sitting too long, or other activities will cause pain, and that she didn't even try to walk due to the pain. She alleged problems sitting longer than 30 minuets at a time due to cramping and pain. The claimant also alleged a history of anxiety, which had previously been managed through medications from her primary care provider. She stated that she primarily stayed in her room during the day, and has problems being around other people. The claimant testified that she could attend to her personal care and household chores independently

(Tr. 27). It is quite apparent that the ALJ acknowledged Plaintiff's subjective complaints during her consultative examination and in the hearing; however, the ALJ's decision process did not stop with merely acknowledging Plaintiff's alleged symptoms and limitations.

After acknowledging Plaintiff's complaints, the ALJ found the objective evidence to be more consistent. The ALJ considered Dr. Sharp's findings and concluded that Plaintiff had "a

prior, remote history of injury to her left lower extremities." (Tr. 28). However, the ALJ noted that these examinations only showed general "normal findings on examination, aside from some mild joint tenderness, and imaging displayed minimal findings." (Tr. 28). As such, the ALJ found the objective evidence did not "support the claimant's allegations regarding the severity of her physical impairments, or the resulting functional limitations." (Tr. 28).

The ALJ detailed the inconsistencies between Plaintiff's subjective symptoms and the objective evidence. However, the subjective evidence could not hold up against the objective evidence. *See Villa*, 895 F.2d at 1024 (stating that subjective evidence need not take precedence over objective evidence.) The ALJ's consideration of Plaintiff's symptoms and his analysis of the objective evidence demonstrate that he considered and used the proper legal standards.

Finally, as it pertains to her mental health, Plaintiff asserts she testified that "she suffered from anxiety and depression." Dkt. No. 9 at 13. According to Plaintiff, these statements were supported by the mental evaluations performed by Dr. Grant and Dr. Rattan. *Id.* In particular, Plaintiff argues that "Dr. Grant and Dr. Rattans' opinions show that she has a substantial loss of ability to (on a sustained basis) maintain consistent performance and handle pressures in a work setting, and deficits in accomplishing complex tasks due to attention/concentration problems"[5] *Id.* at 16. According to Plaintiff, "[t]he findings and conclusions of [Dr. Grant and Dr. Rattan] could have adduced evidence that might have altered the results as to Plaintiff's ability to physically and mentally perform medium work." *Id.*    In its response, the Commissioner argues that Plaintiff shows no error because the ALJ fully accounted for Dr. Grant's and Dr. Rattan's opinions;

---

[5] Plaintiff also points to her primary care provider's notation, where it was noted that she complained of depression, anxiety, and mood swings. Dkt. No. 9 at 14 (citing Tr. 403). However, these complaints are considered subjective evidence.

however, he correctly found them to be unpersuasive because they were inconsistent with the record. Dkt No. 12 at 6. Again, the Court agrees.

The party seeking to overturn the Commissioner's decision has the burden of showing that prejudice resulted from an error. *Jones*, 691 F.3d at 734-35. In essence, the party with this burden must "somehow swing the evidentiary pendulum in his [or her] favor" *Garcia v. Berryhill*, 880 F.3d 700, 705 (5th Cir. 2018).

Here, the ALJ considered the objective evidence from Dr. Grant and Dr. Rattan. The ALJ noted that Dr. Grant opined that Plaintiff was able to understand, carry out, and follow instructions but would not respond appropriately to work pressures in a work setting due to her depressive/anxiety symptoms and her ability to tolerate stress associated with competitive work and work adjustments were poor (Tr. 30). The ALJ then considered the evidence from Dr. Rattan and noted that he opined that "the claimant could carry out basic instructions and exhibit contextually appropriate behavior but might have some intermittent difficulty maintaining consistent employment from a mental health standpoint." (Tr. 30).

The ALJ found that neither opinion was persuasive and provided a detailed explanation for his decision. As to Dr. Grant, the ALJ noted as follows:

> The findings in this opinion are entirely unsupported by findings on examination, showing intact thought process and content, reasoning, memory, attention, concentration and other benign findings aside from a depressed mood and flat affect. The significant opined limitations are entirely unsupported with reference to the findings on examination. Further, this opinion is not consistent with the medical record as a whole, showing the claimant to not seek ongoing treatment for her symptoms of anxiety and depression and display normal findings on mental status evaluation with her primary care provider.

(Tr. 30) (citing Ex. 1F, 24; 4F, 4, 19; 8F, 6, 9). Further, the ALJ elaborated on Dr. Rattan's opinion:

> It is entirely unsupported by findings on examination, showing intact cognitive functioning, reasoning, thought process and content, aside from a somewhat

depressed mood and a slightly restricted expression, and no support is articulated as to how the claimant's impairments would inhibit her from maintaining employment. Further, this opinion is not consistent with the medical record as a whole, showing the claimant to not seek ongoing treatment for her symptoms of anxiety and depression and display normal findings on mental status evaluation with her primary care provider.

(Tr. 30) (citing Ex. 1F, 24; 4F, 4, 19; 8F, 6, 9).

Under 20 C.F.R. § 404.1520c(b), an ALJ is required to "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." The regulation sets forth certain "articulation requirements" and provides that "the most important factors" are "supportability" and "consistency." § 404.1520c(b)(2). *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023). In *Miller*, although the Fifth Circuit held the ALJ failed to explain how she considered the supportability and consistency factors, the claimant failed to meet her burden of showing the ALJ's error was prejudicial. *Id*. at *3. The Fifth Circuit explained that an ALJ's failure to provide a sufficient explanation articulating the persuasiveness of a medical opinion is prejudicial when he "would have adopted" the opinion had he given "further explanation." *Id.* at *4. In *Miller*, the court evaluated the ALJ's opinion and found that she considered the medical opinions in the record by acknowledging that they contained limiting restrictions. *Id.* However, the ALJ ultimately did not find them to be persuasive. *Id.* The Fifth Circuit found no harmful error because the claimant did not show that "if the ALJ had given a further explanation, then she would have adopted them." *Id.*

Here, the ALJ not only considered the medical opinions of Dr. Grant and Dr. Rattan, but he also provided a sufficient explanation for why he rejected those opinions. The ALJ found both opinions were unsupported by findings on examination and that they were not consistent with the medical record as a whole (Tr. 30). For instance, Dr. Grant observed on examination that Plaintiff

was cooperative; demonstrated no evidence of a thought disorder or tangential thinking; had good abstract thinking; displayed adequate memory, concentration, and persistence; worked at a good pace; and had good judgment (Tr. 315-317). Similarly, Dr. Rattan noted that Plaintiff was polite, did not have a thought disorder, and had intact memory (Tr. 439-440). Thus, the ALJ considered whether these opinions were supported by Drs. Grant's and Rattan's own examination findings. *See* 20 C.F.R. § 416.920c(c)(1) (ALJ considers whether opinion is supported). In addition, other examination notes show Plaintiff had an appropriate mood, clear thought process, normal memory, good concentration, normal thought content, and normal judgment (Tr. 26-31, 322, 332, 347, 453, 456). The ALJ therefore considered whether Drs. Grant's and Rattan's opinions were consistent with the record. *See* 20 C.F.R. § 416.920c(c)(2) (ALJ considers whether opinion is consistent with the record). Plaintiff shows no error.

Even if Plaintiff had shown error, Plaintiff fails to meet her burden to show how further supportability and consistency analysis would have led the ALJ to a different outcome. She merely argues that it "might have altered the results as to Plaintiff's ability to physically and mentally perform medium work." Dkt No. 9 at 16. Thus, even if the Court were to find the ALJ failed to meet the "articulation requirements," the Court would find any error harmless. *See Miller*, 2023 WL 234773, *4 (rejecting the argument that ALJ erred because the medical evidence contained functional limitations that may have changed the outcome of the case); s*ee also Walker v. Kijakazi*, No. 23-60116, 2023 WL 7443302, at *5 (5th Cir. Nov. 9, 2023) (claimant has to "outline how further 'supportability' and 'consistency' analysis would lead the ALJ to a different outcome, and thus fails to show prejudice.").

In sum, the ALJ fully accounted for Plaintiff's mental impairments by limiting her to understanding, remembering, and carrying out simple instructions, occasional interaction with the

general public, and frequent interaction with coworkers and supervisors (Tr. 26). Contrary to Plaintiff's assertions, substantial evidence supports the ALJ's residual functional capacity assessment. Because substantial evidence supports the ALJ's findings, the ALJ's decision should be affirmed.

## **RECOMMENDATION**

"The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot fund substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Legget v. Chater*, 67 F.3d 558, 565-66 (5th Cir. 1995). Having reviewed the record, the Court determines the record shows that the Administration correctly applied the applicable legal standards and that substantial evidence supports the Administration's determination that Plaintiff is not disabled. Accordingly, it is

**RECOMMENDED** the above-entitled Social Security action be **AFFIRMED**.

### Objections

Within fourteen (14) days after service of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error,

from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

SIGNED this the 9th day of May, 2024.

_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE

30